USDC SCAN INDEX SHEET

















BJR    2/27/04    11:37
3:04-CV-00419   PALA BAND OF MISSION V. THOMSON
*1*
*CMP.*



1  Jeffrey R. Keohane (CA Bar No. 190201)
   Barbara E. Karshmer (CA Bar No. 59578)
2  Stephen Quesenberry (CA Bar No. 63423)
   Karshmer & Associates
3  (A Professional Corporation)
   2150 Shattuck Ave., Suite 725
4  Berkeley, CA 94704
   Telephone: (510) 841-5056
5  Fax: (510) 841-6167

6  Attorneys for Plaintiff
   Pala Band of Mission Indians

7

8                    UNITED STATE DISTRICT COURT         **BY FAX**

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11
    PALA BAND OF MISSION INDIANS        )   Case No.
12                                      )
            Plaintiff,                   )   **'U4 CV  0419  W (BLM)**
13                                      )
        vs.                             )   COMPLAINT FOR INJUNCTIVE AND
14                                      )   DECLARATORY RELIEF AND DAMAGES
    ERIC THOMSON                        )
15                                      )
            Defendant.                   )
16                                      )
                                        )
17  _____)

18                          **INTRODUCTION**

19      1.      This action seeks preliminary and permanent injunctive relief from trespass actions

20  of the defendant Eric Thomson ("Thomson") who is living and keeping several hundred automobiles

21  on land that he has no legal right to occupy within the exterior boundaries of the Pala Indian

22  Reservation ("Reservation") and who is trespassing by traversing tribal land and roads contrary to

23  requests and explicit directions from the governing body of the Pala Band of Mission Indians

24  ("Tribe") to leave the Reservation.

25      2.      The Tribe has asked and then ordered Thomson to remove his junked cars from the

26  Reservation. Instead Thomson has cut tribal fences in order to transport cars from the junkyard

27  across tribally owned private roads and tribal trust lands to another area of the Reservation.

28      3.      This action seeks preliminary and permanent injunctive relief to prevent Thomson

1  | from further damaging tribal property, from trespassing across reservation lands and roads, and for
2  | damages.

### JURISDICTION AND VENUE

4  |  4.  This court has jurisdiction over the plaintiffs' claims: (a) under 28 U.S.C. §1331, in
5  | that the plaintiffs' claims arise under the Constitution and laws of the United States; and (b) under
6  | 28 U.S.C. §1362 in that the plaintiff Tribe is a federally recognized Indian tribe or band asserting
7  | claims arising under the Constitution and laws of the United States.

8  |  5.  Venue is proper in the Southern District of California because the facts giving rise
9  | to Plaintiffs' claims occurred, and the defendant resides, in the Southern District.

### PARTIES

11 |  6.  The plaintiff in this action is the Pala Band of Mission Indians, a federally recognized
12 | Indian tribe. The Tribe exercises governmental authority over its members and all territory within
13 | the Pala Indian Reservation in northern San Diego County. The Pala Constitution vests day-to-day
14 | governance of the Tribe and Reservation in the Pala Executive Committee, but retains ultimate
15 | authority to the General Council made up of all adult members of the Tribe. (See attached
16 | Exhibit A.)

17 |  7.  The defendant in this action is Eric Thomson, a non-Indian who lives in a vehicle in
18 | a junkyard he has created on agricultural land held in trust on the Pala Indian Reservation.

### STATEMENT OF FACTS

20 |  8.  Section 103(c) of the American Indian Agricultural Act of 1993, 25 U.S.C. 3713,
21 | requires that the Secretary of the Interior promulgate regulations to establish civil penalties for the
22 | trespass to Indian agricultural lands and grants tribes the authority to enforce the provisions of the
23 | section and the regulations promulgated under that section, which are codified at 25 C.F.R. 166.800,
24 | et seq.

25 |  9.  Section 103(c) of the American Indian Agricultural Act of 1993, 25 U.S.C. 3713(c),
26 | expressly reserves the tribes' rights to regulate trespass to Indian agricultural land, and establishes
27 | concurrent tribal and federal authority to enforce the federal regulations. Subsection 3713(c) also
28 | provides that the federal government must defer to tribal enforcement of the regulations, and that

1 | state and federal courts must grant the tribal court judgments full faith and credit.

2 |  10.  On February 11, 2004, with the encouragement of the Bureau of Indian Affairs, the

3 | Tribe amended its Peace & Security Ordinance by adopting Sections 25 CFR 166.800 to 166.819

4 | governing Indian agricultural land as tribal law. See attached Exhibit 1.

5 |  11.  Section 13(b) of the Ordinance Preserving and Maintaining Peace and Security within

6 | the Boundaries of the Pala Indian Reservation ("Peace & Security Ordinance") provides, among

7 | other things, that it shall be unlawful "to refuse or fail to leave land, real property or structures

8 | belonging to another upon being requested to leave." See attached Exhibit 1.

9 |  12.  To provide for the enforcement of tribal law, Section 2(J) of the Pala Constitution

10 | provides that the Tribe may by resolution, ban members or nonmembers who break Pala law from

11 | the Reservation. See attached Exhibit 2.

12 |  13.  On February 11, 2004, The Tribe  adopted Resolution 09-04, Eviction of Eric

13 | Thomson, banning Thomson from the Reservation.  See Attachment C to Declaration of Robert

14 | Smith.

15 |  14.  Thomson currently occupies six lots known as Pala Allotments Nos. 16, 17-B, 18,

16 | 31, 32-A, and 32-B (the "junkyard") with a few hundred junked vehicles.  The lot numbers assigned

17 | by San Diego County are 20, 21, 28, 29, 36, and 37, respectively.  The lots are located in the NW

18 | 1/4 of the NW 1/4 of Section 34, Township 9 South, Range 2 West, of the San Bernardino Meridian.

19 | The lots are held in trust for Indian owners of undivided, fractional beneficial interests therein.

20 |  15.  Federal law requires that any person who wishes to occupy a fractionated allotment

21 | must obtain a lease or leases to the land from the owners of a majority of the beneficial interests in

22 | the land. See, e.g., 25 U.S.C. 415(a) & 3715(c); 25 C.F.R. 162.104.  After that, the lease must be

23 | approved by BIA before the lessee may occupy the fractionated allotment.  At no point has Thomson

24 | been able to produce a lease for the lots.

25 |  16.  Prior to occupation of the lots with junked vehicles, the junkyard was used for

26 | agricultural purposes.

27 |  17.  The Southern California Agency of Bureau of Indian Affairs tested the soil on the

28 | junkyard, and found that there is significant contamination associated with oil spillage. (See

1 | Declaration of Robert Smith, Attachment D.)

2      18.     Mr. Thomson lives in a vehicle in the junkyard. There is no running water, sanitation,

3 | or other facilities on the lots.

4      19.     All of the roads near the junkyard are tribally owned and the general public, including

5 | Mr. Thomson, does not have permission to traverse them. <u>See</u> Attachment A to Declaration of

6 | Robert Smith. The only road that reaches the junkyard, Valenzuela Road, is a tribally owned road

7 | and Mr. Thomson does not have tribal permission to traverse it. The only road open to the public

8 | is Lilac Road, which does not reach the junkyard.

9      20.     The Bureau of Indian Affairs has a standard process by which persons may apply for

10 | rights of way across trust lands. 25 C.F.R.169.3(a). Thomson has not availed himself of that

11 | process.

12      21.     On February 18, 2004, the Tribe caused a "Notice of Trespass" to be served on Mr.

13 | Thomson by Hiram Vazquez of Pala, CA, and received in return a proof of service form from Mr.

14 | Vazquez. <u>See</u> Attachment B to Declaration of Robert Smith. The Notice instructs Thomson to

15 | remove himself and all personal property from the junkyard within five days, during which time he

16 | would be able to appeal the Notice to the Tribe. The Notice of Trespass was issued pursuant to the

17 | Ordinance Preserving and Maintaining Peace and Security within the Boundaries of the Pala Indian

18 | Reservation ("Peace & Security Ordinance").

19      22.     On February 22, 2004, Mr. Thomson and family members cut and removed tribal

20 | fences placed across tribally owned roads and transported four vehicles from the junkyard another

21 | part of the Reservation. (<u>See</u> Declaration of Robert Smith, ¶ 11). When confronted regarding his

22 | trespass Thomson became abusive and refused to leave the Reservation.

23      23.     On February 23, 2004, San Diego County Deputy Sheriffs served Mr. Thomson with

24 | Pala Band of Mission Indians Resolution 09-04, Eviction of Eric Thomson. (See Declaration of

25 | Robert Smith, ¶ 11 and Attachment C.) The Resolution orders Thomson to leave the Reservation

26 | and not to return.

27

28

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Thomson's violation of federal common law

24.    Plaintiff realleges each of the allegations set forth in paragraphs 8 -23, and by this reference incorporates each such allegation herein as set forth in full.

25.    The tribal right to possession of tribal lands is protected under federal common law. See County of Oneida v. Oneida Indian Nation, 470 U.S. 226, 234 (1985). To protect the tribal right to possession of Indian land, the Supreme Court has recognized federal common law actions to enforce those rights, such as suits for ejectment and damages. United States v. Pend Oreille PUD, No. 1, 28 F.3d 1544, 1550 (9th Cir. 1994) citing precedents.

26.    Thomson is occupying land on the Reservation that he does not own and traversing tribally owned roads and trust lands without authorization.

27.    Those actions are constitute trespass at federal common law, and this court may eject Thomson and award damages.

## SECOND CLAIM FOR RELIEF

### Thomson's violation of tribal law

28.    Plaintiff realleges each of the allegations set forth in paragraphs 8 -23, and by this reference incorporates each such allegation herein as set forth in full.

29.    The Tribe has served Thomson with a Notice of Trespass under the Peace & Security Ordinance, as amended, and with Tribal Resolution 09-04, "Eviction of Eric Thomson." See Attachment C & D of the Declaration of Robert Smith.

30.    Both the Notice of Trespass and Resolution 09-04 order Thomson to leave the Reservation and give him five business days to do so. Rather than comply, he has moved several cars over tribal land and roads to another parcel within the Reservation.

31.    The court has authority to grant the Tribe's relief under 25 U.S.C. 3713(c), which grants full faith and credit to certain tribal judgments, or 28 U.S.C. 1367, which grants this court supplemental jurisdiction.

PAGE 11      510 841 6167      MOT NAIDNI REHSRAK:DI 00:61 40, 62/20 885 .oN ELIF

### THIRD CLAIM FOR RELIEF

#### Thomson's violation of federal statutes and regulations

32. Plaintiff realleges each of the allegations set forth in paragraphs 8 -23, and by this reference incorporates each such allegation herein as set forth in full.

33. Thomson is occupying agricultural land that he converted to a junkyard. He does not have a lease, much less one from the holders of a majority interest in the lots that underlie the junkyard. Or one that has been approved as required by law by the Secretary of the Interior.

34. Section 105(c) of the American Indian Agricultural Act of 1993, 25 U.S.C. 3715(c), requires that leases of fractionated allotments must be approved by the owners of majority interest of the land. Under 25 C.F.R. 162.104, a written lease is required for anyone to occupy allotments other than an owner who owns the entire beneficial interest in the allotment, which lease must be approved by the Secretary of the Interior pursuant to 25 U.S.C. 415.

35. Section 103(c) of the American Indian Agricultural Act of 1993, 25 U.S.C. 3713(c), grants the Tribe the authority to enforce the provisions of the section and the regulations promulgated under that section, which are codified at 25 C.F.R. 166.800, et seq.

### PRAYER FOR RELIEF

Wherefore, plaintiff respectfully requests that the court:

1. Declare that Thomson is trespassing on the Pala Indian Reservation in violation of the Tribe's common law right to possession of tribal lands.

2. Declare that Thomson is trespassing on the Pala Indian Reservation in violation of the Tribe's Peace & Security Ordinance and Tribal Resolution 09-04.

3. Grant full faith and credit under 25 U.S.C. 3713, to the Executive Committee's issuance of a Notice of Trespass because the judicial functions of the Tribe are carried out by the Executive Committee.

4. Declare that Thomson is in violation of federal statutes and implementing regulations, inter alia, 25 U.S.C. 3715, 25 U.S.C. 415(a) & 25 C.F.R. 162.104.

5. Enter a temporary restraining order ordering Thomson to remove himself and his personal effects from the Pala Indian Reservation within one calendar day.

6.    Enter a preliminary and permanent injunction enjoining Thomson from further trespass on the Reservation and prohibiting him from entering the Reservation and traversing tribally owned roads and parcels and trust allotments of the Pala Indian Reservation.

7.    Award the Tribe damages for the trespass to its land, destruction of tribal property, including fences, and such other relief as the court deems appropriate.

Dated: February 26, 2004

Respectfully submitted:
KARSHMER & ASSOCIATES

By
    Jeffrey R. Keohane,

Attorneys for Plaintiff
Pala Band of Mission Indians

FILE No. 588 02/26 '04 16:01 ID:KARSHMER INDIAN LAW    510 841 6167    PAGE 13

**TABLE OF CONTENTS OF EXHIBITS**
**TO COMPLAINT**

Page No.

Exhibit 1 - Ordinance Preserving and Maintaining Peace and Security

    Within the Boundaries of the Pala Indian Reservation ...................... 1

Exhibit 2 - Constitution of the Pala Band of Mission Indians ........................... 10

12115

Page 1

RECYCLED PAPER MADE FROM 30% POST CONSUMER CONTENT

**EXHIBIT 1 ___9___ PAGES**

## ORDINANCE PRESERVING AND MAINTAINING PEACE
### AND SECURITY WITHIN THE BOUNDARIES
### OF THE PALA INDIAN RESERVATION

### Section 1.    Title

This ordinance shall be known as the Pala Peace and Security Code.

### Section 2.    Policies

The peace and security of all residents of the Pala Reservation, both member and non-member, shall be preserved and protected by the Pala Band. It is the policy of the Pala Band that all residents on the reservation are entitled to the peaceful and tranquil pursuit of their lifestyles. It is the further policy of the Pala Band that Pala reservation residents are entitled to security against harrassment, vandalism, disturbing the peace and other antisocial acts, both in public and private.

### Section 3.    Jurisdiction

This ordinance shall be applicable to all persons and lands within the exterior boundaries of the Pala Indian reservation.

### Section 4.    Band Regulation

The General Council of the Pala Band shall promulgate such ordinances as it deems proper and necessary to carry out the policies of the Pala Band with respect to preserving and maintaining the peace and security of its residents. Such ordinances may supersede and supplement any existing ordinances and include any provisions which the Band deems necessary to carry out the policies and procedures of this ordinance.

### Section 5.    Prohibited Acts

1.    It shall be unlawful for any person to maliciously injure or destroy or

**EXHIBIT 1**

1

**PAGE 1**

deface any real or personal property not his own.

2.  It shall be unlawful for any person to lawfully fight in a public place or to challenge any other person in public to fight. It shall also be unlawful for any person to maliciously and willfully disturb another person by loud and unreasonable noise.

3.  It shall be unlawful for any person, other than the owner, person in possession of the property, or person having the express permission of the owner or person in possession of the property, to hunt or discharge while hunting any firearm or other deadly weapon within 150 yards of any occupied dwelling, house, residence or other building or any barn or other outbuilding used in connection therewith.

4.  It shall be unlawful for any person to willfully discharge a firearm at any dwelling house or occupied building or occupied motor vehicle.

5.  It shall be unlawful for any person to use, brandish or possess any firearm in any manner that constitutes a danger or hazard to residents of the Pala reservation.

6.  It shall be unlawful for any person to shoot any firearm from or upon roads or highways within the reservation.

7.  It shall be unlawful for any person to give, purchase for, or furnish any minor (any person under 18 years of age) any alcoholic beverages on the Pala reservation.

8.  It shall be unlawful for any person to drink alcoholic beverages of any kind, at any time, in the Pala reservation park, unless such consumption or drinking occurs at a recognized church or organized reservation function.

9.  It shall be unlawful for any person to wash their vehicles, to include cars, trucks, motorcycles, in the Pala reservation park.

**EXHIBIT 1**

2

**PAGE 2**

10. It shall be unlawful for any person to loiter, remain or stay in any public area of the Pala reservation past the hour of 11:00 p.m.

11. It shall be unlawful to physically attack or challenge to fight, resist arrest or otherwise interfere with the performance of duty of any Band-appointed security or police officer.

12. It shall be unlawful for any able bodied person above 18 years of age to neglect or refuse to aid and assist in preventing any breach of the peace or the commission of any criminal offense after being requested by a Band appointed security or police officer to do so.

13. It shall be unlawful and a trespass for any person to do the following:

   a. to go upon, enter or remain upon the lands of another whether unenclosed or enclosed by fence, for the purpose of injurying any property or with the intention of interfering with, obstructing, or injurying any lawful business occupation or activity carried on by the owner of such land, his agent or by the person in lawful possession; and

   b. to refuse or fail to leave land, real property or structures belonging to another or lawfully occupied by another upon being requested to leave by the Security Officer, the owner, his agent or the person in lawful possession thereof.

14. It shall be unlawful to willfully and maliciously set any fire to or burn or cause to be burned or aid, counsel, or assist in the burning of any trailer, motor vehicle, camper, dwelling house, structure, barn, stable, or crops located in the reservation.

15. It shall be unlawful to operate any vehicle on any street or road within the reservation in willful or wanton disregard for the safety of persons or property.

**EXHIBIT 1**

3

**PAGE 3**

16.  It shall be unlawful to drive any vehicle in excess of 25 miles per hour on any paved road within the reservation, with the exception of Highway 76, and it shall be unlawful to drive any vehicle on any unpaved road with in the reservation in excess of 15 miles per hour.

17.  It shall be unlawful to:

  a.  operate any motorcycle on the reservation without a valid California driver's license;

  b.  to operate any motorcycle anywhere on the reservation so as to disturb the peace of other reservation residents;

  c.  to operate a motorcycle anywhere on the reservation without a spark arrester on said motorcycle.

18.  It shall be unlawful to introduce, cultivate, use, possess or sell on the reservation any form of marijuana or any of its derivatives, any amphetimines, or any narcotics or any of its derivatives set forth in Section 11350 of the California Health and Safety Code.

19.  It shall be unlawful to come upon or be upon the Pala reservation while under the influence of the substances, narcotics or drugs set forth in Paragraph 18 above.

## Section 6.    Enforcement

A.    General Powers of Officers

It shall be the duty of every Band law enforcement or security officer to enforce this ordinance and all supplemental rules and regulations adopted by the Pala Band's General Council governing law and order on the Pala Reservation.

Ordinance # 042182/GM/18F                                    EXHIBIT 1

PAGE 4

On February 11, 2004 the Pala Band of Mission Indians ("PBMI") at a General Council meeting called to conduct Tribal business adopted by a vote of 84 for, 1 opposed, that section of Code of Federal Regulations Title 25 Volume 1, Revised as of April 1, 2003 PART 166 – Grazing Permits – Subpart I – Trespass, Sec. 166.800 through Sec. 166-819

The adopted Subpart I – Trespass, Sec. 166.800 through Sec. 166.819 shall be an amendment to the Peace & Security Ordinance of the PBMI.

Code of Federal Regulations]
[Title 25, Volume 1]
[Revised as of April 1, 2003]
From the U.S. Government Printing Office via GPO Access
[CITE: 25CFR166.800]

[Page 490]

TITLE 25--INDIANS

CHAPTER I--BUREAU OF INDIAN AFFAIRS, DEPARTMENT OF THE INTERIOR

PART 166--GRAZING PERMITS--Table of Contents

Subpart I--Trespass

Sec. 166.800  What is trespass?

Under this part, trespass is any unauthorized occupancy, use of, or action on Indian agricultural lands. These provisions also apply to Indian agricultural land managed under an agricultural lease or permit under part 162 of this title.

PART 166--GRAZING PERMITS--Table of Contents

Subpart I--Trespass

Sec. 166.801  What is the PBMI -- BIA's trespass policy?

We will:
    (a) Investigate accidental, willful, and/or incidental trespass on Indian agricultural land;
    (b) Respond to alleged trespass in a prompt, efficient manner;
    (c) Assess trespass penalties for the value of products used or removed, cost of damage to the Indian agricultural land, and enforcement costs incurred as a consequence of the trespass.
    (d) Ensure that damage to Indian agricultural lands resulting from trespass is rehabilitated and stabilized at the expense of the trespasser.

Sec. 166.802  Who can enforce this subpart?

    (a) The PBMI – BIA enforces the provisions of this subpart. If the tribe adopts the provisions of this subpart, the tribe will have concurrent jurisdiction to enforce this subpart. Additionally, if the tribe so

**EXHIBIT 1**

1

**PAGE 5**

requests, we will defer to tribal prosecution of trespass on Indian
agricultural lands.
   (b) Nothing in this subpart shall be construed to diminish the
sovereign authority of Indian tribes with respect to trespass.

                        Notification

Sec. 166.803  How are trespassers notified of a trespass determination?

   (a) Unless otherwise provided under tribal law, when we have reason
to believe that a trespass on Indian agricultural land has occurred,
within five business days, we or the authorized tribal representative
will provide written notice to the alleged trespasser, the possessor of
trespass property, any known lien holder, and beneficial Indian
landowner, as appropriate. The written notice will include the
following:
   (1) The basis for the trespass determination;
   (2) A legal description of where the trespass occurred;
   (3) A verification of ownership of unauthorized property (e.g.,
brands in the State Brand Book for cases of livestock trespass, if
applicable);
   (4) Corrective actions that must be taken;
   (5) Time frames for taking the corrective actions;
   (6) Potential consequences and penalties for failure to take
corrective action; and
   (7) A statement that unauthorized livestock or other property may
not be removed or disposed of unless authorized by us.
   (b) If we determine that the alleged trespasser or possessor of
trespass property is unknown or refuses delivery of the written notice,
a public trespass notice will be posted at the tribal community
building, U.S. Post Office, and published in the local newspaper nearest
to the Indian agricultural lands where the trespass is occurring.
   (c) Trespass notices under this subpart are not subject to appeal
under 25 CFR part 2.

Sec. 166.804  What can I do if I receive a trespass notice?

   If you receive a trespass notice, you will within the time frame
specified in the notice:
   (a) Comply with the ordered corrective actions; or
   (b) Contact us in writing to explain why the trespass notice is in
error. You may contact us by telephone but any explanation of trespass
you wish to provide must be in writing. If we determine that we issued
the trespass notice in error, we will withdraw the notice.

Sec. 166.805  How long will a written trespass notice remain in effect?

   A written trespass notice will remain in effect for the same conduct
identified in that written notice for a period of one year from the date
of receipt of the written notice by the trespasser.

Sec. 166.806  What actions does the PBMI – BIA take against trespassers?

   If the trespasser fails to take the corrective action specified by
us, we may take one or more of the following actions, as appropriate:
   (a) Seize, impound, sell or dispose of unauthorized livestock or

                                                              EXHIBIT 1

                          2

                                                              PAGE 6

other property involved in the trespass. We may keep such property we seize for use as evidence.

(b) Assess penalties, damages, and costs, under Sec. 166.812 of this subpart.

**Sec. 166.807  When will we impound unauthorized livestock or other property?**

We will impound unauthorized livestock or other property under the following conditions:

(a) Where there is imminent danger of severe injury to growing or harvestable crop or destruction of the range forage.

(b) When the known owner or the owner's representative of the unauthorized livestock or other property refuses to accept delivery of a written notice of trespass and the unauthorized livestock or other property are not removed within the period prescribed in the written notice.

(c) Any time after five days of providing notice of impoundment if you failed to correct the trespass.

**Sec. 166.808  How are trespassers notified if their unauthorized livestock or other property are to be impounded?**

(a) If the trespass is not corrected in the time specified in the initial trespass notice, we will send written notice of our intent to impound unauthorized livestock or other property to the unauthorized livestock or property owner or representative, and any known lien holder of the unauthorized livestock or other property.

(b) If we determine that the owner of the unauthorized livestock or other property or the owner's representative is unknown or refuses delivery of the written notice, we will post a public notice of intent to impound at the tribal community building, U.S. Post Office, and published in the local newspaper nearest to the Indian agricultural lands where the trespass is occurring.

(c) After we have given notice as described above, we will impound unauthorized livestock or other property without any further notice.

**Sec. 166.809  What happens after my unauthorized livestock or other property are impounded?**

Following the impoundment of unauthorized livestock or other property, we will provide notice that we will sell the impounded property as follows:

(a) We will provide written notice of the sale to the owner, the owner's representative, and any known lien holder. The written notice must include the procedure by which the impounded property may be redeemed prior to the sale.

(b) We will provide public notice of sale of impounded property by posting at the tribal community building, U.S. Post Office, and publishing in the local newspaper nearest to the Indian agricultural lands where the trespass is occurring. The public notice will include a description of the impounded property, and the date, time, and place of the public sale. The sale date must be at least five days after the publication and posting of notice.

**Sec. 166.810  How do I redeem my impounded livestock or other property?**

You may redeem impounded livestock or other property by submitting

**EXHIBIT 1**

3

**PAGE 7**

proof of ownership and paying all penalties, damages, and costs under
Sec. 166.812 of this subpart and completing all corrective actions
identified by us under Sec. 166.804 of this subpart.

Sec. 166.811  How will the sale of impounded livestock or other property be conducted?

   (a) Unless the owner or known lien holder of the impounded livestock
or other property redeems the property prior to the time set by the
sale, by submitting proof of ownership and settling all obligations
under Sec. 166.804 and Sec. 166.812 of this subpart, the property will
be sold by public sale to the highest bidder.
   (b) If a satisfactory bid is not received, the livestock or property may be re-offered for sale, returned to
the owner, condemned and destroyed, or otherwise disposed of.
   (c) We will give the purchaser a bill of sale or other written receipt evidencing the sale.

Sec. 166.812  What are the penalties, damages, and costs payable by trespassers on Indian agricultural
land?

   Trespassers on Indian agricultural land must pay the following
penalties and costs:
   (a) Collection of the value of the products illegally used or
removed plus a penalty of double their values;
   (b) Costs associated with any damage to Indian agricultural land
and/or property;
   (c) The costs associated with enforcement of the regulations,
including field examination and survey, damage appraisal, investigation
assistance and reports, witness expenses, demand letters, court costs,
and attorney fees;
   (d) Expenses incurred in gathering, impounding, caring for, and
disposal of livestock in cases which necessitate impoundment under
Sec. 166.807 of this subpart; and
   (e) All other penalties authorized by law.

Sec. 166.813  How will the PBMI – BIA determine the value of forage or crops consumed or destroyed?

   We will determine the value of forage or crops consumed or destroyed
based upon the average rate received per month for comparable property
or grazing privileges, or the estimated commercial value or replacement
costs of such products or property.

Sec. 166.814  How will the PBMI – BIA determine the value of the products or property illegally used or
removed?

   We will determine the value of the products or property illegally
used or removed based upon a valuation of similar products or property.

Sec. 166.815  How will the PBMI – BIA determine the amount of damages to Indian agricultural land?

   We will determine the damages by considering the costs of
rehabilitation and revegetation, loss of future revenue, loss of
profits, loss of productivity, loss of market value, damage to other
resources, and other factors.

Sec. 166.816  How will the BIA determine the costs associated with enforcement of the trespass?

   Costs of enforcement may include detection and all actions taken by

**EXHIBIT 1**

4

**PAGE 8**

us through prosecution and collection of damages. This includes field examination and survey, damage appraisal, investigation assistance and report preparation, witness expenses, demand letters, court costs, attorney fees, and other costs.

Sec. 166.817 What happens if I do not pay the assessed penalties, damages and costs?

Unless otherwise provided by applicable tribal law:
(a) We will refuse to issue you a permit for use, development, or occupancy of Indian agricultural lands; and
(b) We will forward your case for appropriate legal action.

Sec. 166.818 How are the proceeds from trespass distributed?

Unless otherwise provided by tribal law:
(a) We will treat any amounts recovered under Sec. 166.812 of this subpart as proceeds from the sale of agricultural property from the Indian agricultural land upon which the trespass occurred.
(b) Proceeds recovered under Sec. 166.812 of this subpart may be distributed to:
(1) Repair damages of the Indian agricultural land and property;
(2) Reimburse the affected parties, including the permittee for loss due to the trespass, as negotiated and provided in the permit; and
(3) Reimburse for costs associated with the enforcement of this subpart.
(c) If any money is left over after the distribution of the proceeds described in paragraph (b) of this section, we will return it to the trespasser or, where we cannot identify the owner of the impounded property within 180 days, we will deposit the net proceeds of the sale into the accounts of the landowners where the trespass occurred.

Sec. 166.819 What happens if the PBMI -- BIA does not collect enough money to satisfy the penalty?

We will send written notice to the trespasser demanding immediate settlement and advising the trespasser that unless settlement is received within five business days from the date of receipt, we will forward the case for appropriate legal action. We may send a copy of the notice to the Indian landowner, permittee, and any known lien holders.

**EXHIBIT 1**

5

**PAGE 9**

RECYCLED PAPER MADE FROM 30% POST CONSUMER CONTENT

EXHIBIT 2 ___/4___ PAGES

14

# CONSTITUTION

## of the

# PALA BAND OF MISSION INDIANS

(REVISED)

**EXHIBIT 2**

**PAGE 10**

12

# CONSTITUTION
## of the
## PALA BAND OF MISSION INDIANS

## TABLE OF CONTENTS

PREAMBLE...................................................... 1

ARTICLE I - PURPOSE AND JURISDICTION...................... 1
   Section 1. - Purpose.............................................. 1
   Section 2. - Territory and Jurisdiction....................... 1

ARTICLE II - MEMBERSHIP REQUIREMENTS.................. 2
   Section 1. - Membership Requirements...................... 2
   Section 2. - Membership Roll................................ 2
   Section 3. - Membership in Other Tribes or Bands........ 2
   Section 4. - Loss of Membership............................. 2
   Section 5. - Membership Ordinance.......................... 2

ARTICLE III - GENERAL COUNCIL............................ 3
   Section 1. - Governing Body................................. 3
   Section 2. - Powers of the General Council................ 3
   Section 3. - Meetings........................................ 4
   Section 4. - Voting........................................... 5
   Section 5. - Motions......................................... 5
   Section 6. - Attendance and Participation at Regular and
          Special Meetings.................................. 5
   Section 7. - Conduct of Meetings........................... 5

ARTICLE IV - ELECTIONS.................................... 6
   Section 1. - Establishment of Election Ordinance........ 6
   Section 2. - Voting........................................... 6

ARTICLE V - EXECUTIVE COMMITTEE....................... 6
   Section 1. - Composition.................................... 6
   Section 2. - Qualifications.................................. 6
   Section 3. - Election......................................... 6
   Section 4. - Term of Office.................................. 7
   Section 5. - Vacancies....................................... 7
   Section 6. - Recall........................................... 7
   Section 7. - Removal......................................... 7
   Section 8. - Executive Committee Meetings................ 7
   Section 9. - Quorum.......................................... 7
   Section 10. - Officers........................................ 8
   Section 11. - Powers and Duties of the Executive........
          Committee........................................ 9
   Section 12. - Quorum and Voting............................ 10

ARTICLE VI - MISCELLANEOUS PROVISIONS................ 10
   Section 1. - Bill of Members................................ 10

ARTICLE VII - SAVINGS CLAUSE ..

EXHIBIT 2

PAGE 11

13

ARTICLE VIII - SEVERABILITY CLAUSE....... ...................          10

ARTICLE IX - AMENDMENTS AND EFFECTIVE DATE.......          11
    Section 1. - Effective Date..........................................          11
    Section 2. - Future Amendments...................................          11

EXHIBIT 2

PAGE 12

CONSTITUTION
of the
PALA BAND OF MISSION INDIANS

Pala, California

PREAMBLE

We, the members of the Pala Band of Mission Indians, hereinafter referred to as the Pala Band, exercising our inherent rights as a sovereign, federally-recognized Indian tribe, do hereby adopt the following Constitution to supersede the Articles of Association which were approved by the Commissioner, Bureau of Indian Affairs, on March 7, 1969.

## ARTICLE I - PURPOSE AND JURISDICTION

Section 1     PURPOSE

The purpose and powers of the Pala Band of Mission Indians shall be to protect and promote the welfare and best interests of the members of the Pala Band of Mission Indians; to protect and to exercise the Pala Band's inherent rights as a federally-recognized Indian tribe, whether said rights exist at present or are conferred at a later date; to promote economic development on the Pala Indian Reservation to improve the economic condition of the Pala Band and the employment opportunities for its members; and to further and achieve self-government and self-determination in all tribal affairs; provided, however, that no tribal rights shall be limited or relinquished by the adoption of whether in existence at present or later conferred, are hereby reserved by the Pala Band and included as if fully set forth herein.

Section 2.     TERRITORY AND JURISDICTION

The jurisdiction of the Pala Band shall extend to all lands within the exterior boundaries of the Pala Indian Reservation and shall also extend to any lands which may be added to the Reservation in the future. Said jurisdiction extends to land held in trust by the United States of America, whether assigned, allotted or tribal lands. To any lands held in fee by the Pala Band, by members of the Pala Band, or by non-members including individuals, partnerships, corporations, or other business entities and to any mining claims and homestead within the exterior boundaries of the Reservation. This jurisdiction shall extend to all persons and entities within the exterior boundaries of the Reservation and to all lands, surface waters, ground waters, river beds, submerged lands, properties, air and air space, minerals, natural resources and any other resources. The Pala Band of Mission Indians retains the right to and shall exercise its inherent tribal jurisdiction in all respects to the fullest extent allowed by law.

**EXHIBIT 2**

**PAGE 13**

2

## ARTICLE II - MEMBERSHIP

Section 1    MEMBERSHIP REQUIREMENTS

The membership of the Band shall consist of:

A    Those persons whose names appear on the Pala Allotment Roll as approved by the Secretary of the Interior on April 12, 1896, and November 9, 1913, who were living on the date of approval of the Pala Band's original Articles of Association by the Commissioner of Indian Affairs.

B    All living descendants of persons on the Allotment Rolls covered in Section (1) above regardless of whether the original allottees are living or deceased, provided that they are direct lineal descendants and have one-sixteenth (1/16) or more degree of Indian blood of the Pala Band.

C    Those persons who have been adopted by the Band and such adoption has been approved by the Bureau of Indian Affairs.

Section 2.    MEMBERSHIP ROLL

The Executive Committee shall keep the membership roll current annually by striking therefrom the names of persons who have relinquished in writing their membership in the Band and of deceased members upon receipt of a death certificate or other evidence of death, and by adding the names of children born to members who meet the membership requirements.

Section 3.    MEMBERSHIP IN OTHER TRIBES OR BANDS

No person may be a member of the Pala Band who is a member of any other federally-recognized Indian tribe or band. If a member of another tribe or Band is eligible for enrollment in the Pala Band and applies for membership in the Pala Band, that person must relinquish his/her membership in the other Tribe or Band prior to being added to the membership rolls of the Pala Band and must present the Pala Band with evidence satisfactory to the Pala Band of having done so. Should a member of the Pala Band enroll in any other Tribe or Band, he shall immediately notify the Pala Band of such other enrollment and his/her membership in the Pala Band will be deemed to have been relinquished effective on the date of enrollment in the other Tribe or Band whether or not the required notice is given.

Section 4.    LOSS OF MEMBERSHIP

Procedures for disenrollment, if any, will be established in an Ordinance or as part of the Enrollment Ordinance. Such procedures shall provide that the member receives due process and equal protection as required by the Indian Civil Rights Act

**EXHIBIT 2**

**PAGE 14**

3

Section 5.    MEMBERSHIP ORDINANCES

The Executive Committee may from time to time amend and/or replace its existing Enrollment Ordinance with an Ordinance governing adoption, loss of membership, disenrollment, and future membership, provided that such ordinances are in compliance with this Constitution.

## ARTICLE III - GENERAL COUNCIL

Section 1.    GOVERNING BODY

The governing body of the Pala Band shall be the General Council, which shall consist of all members of the Pala Band who are eighteen years of age or older.

Section 2.    POWERS OF THE GENERAL COUNCIL

Subject to any limitations imposed by applicable law, the General Council shall exercise all powers allowed by law and not otherwise restricted by this Constitution, including but not limited to the following powers.

A    To manage all affairs relating to tribal lands, tribal economic development enterprises, tribal assets, to include but not limited to, review and approval of leases, contracts, and management agreements.

B    To employ legal counsel pursuant to federal law and subject to the approval of the Secretary of the Interior.

C    To enact ordinances, not inconsistent with the Constitution, or to delegate this authority to the Executive Committee.

D    To assess fees for the payment of expenses of the Band or to finance any project which in its opinion is for the benefit of the Pala Band as a whole.

E    To establish its own rules of procedure for the conduct of its affairs and by appropriate ordinance or resolution delegate to the Executive Committee or any other committee any of the foregoing powers and duties.

F    To levy taxes, including but not limited to sales tax, possessory interest tax, mineral extracting tax, or other taxes as the General Council deems necessary.

G    To raise and address issues concerning the general well-being of the community.

H    To provide services and programs for tribal members and other reservation residents as necessary or appropriate.

**EXHIBIT 2**

**PAGE 15**

4

I       To establish a Tribal Court or other judicial system to adjudicate disputes and appeals involving the Pala Band, its members, and others within the boundaries of the Reservation and to enact ordinances to provide for the enforcement of such tribal court decisions, judgments, or orders.

J       The General Council will authorize the Executive Committee to remove members or non-members from the Reservation by taking the appropriate legal or other action of authorizing the Executive Committee to do so.

K       To appoint delegates to represent the Pala Band as part of such organizations as the Pala Band may join from time to time, provided however that if these delegates miss 3 consecutive meetings without a valid excuse, they will be deemed to have resigned, leaving the positions available for another appointment.

L       To take appropriate actions necessary to enforce the powers listed herein, pursuant to tribal and federal laws and tribal custom and tradition.

Section 3.    MEETINGS

A.      Regular Meetings.  A regular meeting of the General Council shall be convened on the 2nd Wednesday of each month.

B.      Special Meetings.  Special General Council meetings may be called by the Executive Committee or by a petition signed by ten percent (10%) of the eligible voters stating the purpose of the special meeting and the proposed agenda for the special meeting.

C.      Quorum.  Actions taken at a regular or special meeting of the General Council shall not be valid unless a quorum consisting of at least 25 eligible voting members of the Pala Band, five of which must be Executive Council Members, have signed in at the meeting.  If there is not a quorum present, the meeting may proceed for informational purposes, but no votes shall be taken.

D.      Notice.  All regular and special General Council meetings shall be publicly noticed for no less than fourteen (14) calendar days prior to the meeting by posting notices at the Tribal Offices and/or at other appropriate places on the Reservation.  In the case of an emergency, a meeting may be called on three (3) days advance notice and which notice shall also be posted in advance at the Tribal Hall and/or other appropriate places on the Reservation.  Unless proper notice is given as required herein, any actions taken or decisions made during that meeting shall not be valid and binding.

**EXHIBIT 2**

**PAGE 16**

5

Section 4.    VOTING

   Only duly enrolled tribal members who have signed in at the meeting may vote. The method of voting, either by show of hands or by secret ballot, will be determined by the Executive Committee. No measure being voted on will become effective unless a majority of voters vote in favor of the measure.

Section 5.    MOTIONS

   Once a motion is adopted by the General Council, no attempt to reverse that position for a period of one (1) year will be permissible.

Section 6    ATTENDANCE AND PARTICIPATION AT REGULAR AND SPECIAL MEETINGS

   A    Only enrolled members of the Pala Band shall attend Executive Committee or General Council meetings. Non-members may attend only if invited by the Executive Committee.

   B    Only members of the tribe eighteen (18) years and over may vote and participate in discussions at General Council meetings, unless otherwise authorized by the Executive Committee.

   C    Tribal members must sign in at General Council regular or special meetings in order to vote or participate in discussions.

Section 7.    CONDUCT OF MEETINGS

   A    Meetings shall be conducted in accordance with the procedures set forth in Robert's Rules of Order unless such procedures conflict with tribal custom and tradition. In such cases, custom and tradition shall take precedence.

   B    Any member who is disorderly or disrupts the meeting shall be removed and excluded from the meeting.

   C    Each member will be permitted five (5) minutes to speak but may be allowed additional time at the discretion of the Executive Committee.

   D    Tribal members may submit agenda items for discussion at a General COUNCIL Meeting no later than ten (10) days prior to the date of the meeting on a form provided by the Executive Committee. The Executive Committee may add agenda items at any time prior to printing of the agenda.

**EXHIBIT 2**

**PAGE 17**

6

## ARTICLE IV - ELECTIONS

Section 1. ESTABLISHMENT OF ELECTION ORDINANCE

All nominations and elections shall be conducted in accordance with an election ordinance adopted by the General Council or the Executive Committee as delegated. Said ordinance shall establish the following: polling places, establishment of the election committee and its duties, absentee ballots and other requirements as needed.

Section 2. VOTING

Any member of the Pala Band eighteen years of age or older shall have the right to vote in all tribal elections or General Council Meetings.

## ARTICLE V - EXECUTIVE COMMITTEE

Section 1. COMPOSITION

There shall be elected an Executive Committee consisting of a Chairman, a Vice-Chairman, a Secretary and a Treasurer, and two adult members of the Pala Band.

Section 2. QUALIFICATIONS

A. To be elected to serve on the Executive Committee a member of the Pala Band must be twenty-one (21) years of older before being nominated to run for office.

B. Before the names of a person who has been nominated can be put on that ballot, that person must complete a form provided by the Executive Committee and certify under penalty of perjury that he/she has not been convicted of a felony or any other criminal offense included above. The Executive Committee will verify that there has been no such conviction(s). The General Council may make an exception for vehicle related felony traffic offenses or for offenses which occurred more than ten years earlier.

C. Procedures will be contained in the Band's Election Ordinance.

Section 3. ELECTION

All elections of Executive Committee members shall be by secret ballot. Nominations shall be made at a general council meeting called for that sole purpose, and all eligible nominees certified as voters by the Election Committee shall have their names placed on the ballot.

**EXHIBIT 2**

**PAGE 18**

7

Section 4.    TERM OF OFFICE

All Executive Committee members shall be elected for a term of two years, or until their successors are duly elected. The terms shall be staggered with the Chair, Treasurer, and one at-large Executive Committee member being elected in even-numbered years and the Vice-Chair, Secretary and the other at-large Executive Committee member being elected in odd-numbered years.

Section 5.    VACANCIES

If an officer shall die, resign, be found guilty of a felony in any State or Federal court or be recalled for any other cause from his office, a vacancy in the office shall be automatically created. If an Executive Committee member resigns, he/she cannot be elected to office for five years from the date of the resignation. A seat on the Executive Committee will be deemed to be automatically vacated if any Executive Committee member misses more than three (3) consecutive Executive Committee meetings unless the absence is excused by the Executive Committee for good cause. All vacancies described in the paragraph shall be filled by the General Council at its next meeting and such replacement shall serve the unexpired remainder of the term of office.

Section 6.    RECALL

Upon receipt of a recall petition stating the reasons for the recall of an Executive Committee member or members, which petition is signed by at least twenty-percent (20%) of the eligible voting members of the Band, the Executive Committee shall set and provide notice of a meeting to be held within (30) days after receipt of the petition. At this meeting the Executive Committee member or members being recalled shall have the opportunity to respond to any charges being made against him or her. Within ten days after that meeting, the Executive Committee shall cause a Recall Election to be held. A majority of those voting at the election shall govern, provided that at least thirty percent (30%) of those eligible vote in the election. Recall of elected officials will be limited to one (1) per term of office.

Section 7.    REMOVAL

    A.    Failure to attend three (3) consecutive meetings without a valid excuse, including regular, emergency and special meetings: Provided that the member has received notice of the meetings.

    B.    Gross misconduct in office;

    C.    Incapacity from physical or mental disability, to the extent that he/she is incapable of exercising judgment about or attending to the business of the Executive Committee;

    D.    Conviction of a crime under Federal, State or Tribal Law while holding office.

**EXHIBIT 2**

**PAGE 19**

5

## Section 8.   EXECUTIVE COMMITTEE MEETINGS

The Executive Committee shall normally meet each week at such time as may be set by it. Special meeting shall be convened on call by the Chairman or a majority of the Committee members.

## Section 9.   QUORUM

A quorum shall consist of five (5) members and no business shall be conducted in the absence of a quorum.

## Section 10.   OFFICERS

The Executive Committee shall have the following officers whose duties shall be as follows:

A.   Chairman. The Chairman shall preside at all meetings of the General Council and Executive Committee and shall have general supervision of all other officers, employees, and committees of the Band and see that their duties are properly performed. When neither the General Council nor the Executive Committee are in session, the Chairman shall be the official representative of the Band. The Chairman shall vote only in the case of a tie vote in either the General Council or Executive Committee meetings.

B.   Vice-Chairman. In the absence of the Chairman, the Vice-Chairman shall have the power and authority of the Chairman. The Vice-Chairman, when authorized by the Chairman, assist the Chairman in the performance of his duties.

C.   Secretary. The Secretary shall keep or oversee the keeping of the minutes of both the General Council meetings and meetings of the Executive Committee and shall certify the enactment of all ordinances or resolutions of both the Executive Committee and General Council. The Secretary shall also receive on behalf of the Executive Committee all petitions provided for in this document.

D.   Treasurer. The Treasurer shall oversee the care and custody of all assets for the Band and deposit all money in an approved depository. The Treasurer shall disburse or oversee the disbursement of all funds as ordered by the General Council by check to be co-signed by the Chairman or the Secretary and shall maintain or oversee the maintenance of financial accounts, receipts, and records. All financial records shall be available for inspection by officers of the Executive Committee, representatives of federal agencies, and other state or private agencies which may provide funding to the Pala Band of Mission Indians. All Financial records of the Band shall be audited at least once each year and such other times as may be directed by the General Council or required by the Federal Government or any agency providing funding to the Pala Band.

**EXHIBIT 2**

**PAGE 20**

9

   E.   <u>Executive Committee Members at Large.</u> The two Executive Committee members at Large shall have such duties as may be assigned to them from time to time by the Chairman or by the Executive Committee as a whole.

## Section 11.   POWERS AND DUTIES OF THE EXECUTIVE COMMITTEE

The Executive Committee shall have the following powers and duties, but shall not commit the Pala Band to any contract, lease, or other business agreement unless it is so empowered by a duly enacted ordinance or resolution of the General Council.

   <u>A</u>   Cause the effectuation of all ordinances, resolutions or other enactments of the General Council;

   <u>B</u>   Represent the Band in all negotiations between the Band and local, State and Federal Government, their agencies and officers, and faithfully advise the General Council of all such negotiations;

   <u>C</u>   Represent the Pala Band in all negotiations with individuals, private businesses, and any other entities seeking to do business with the Pala Band;

   <u>D</u>   To advise Congress and representative of the Interior Department and other federal agencies on appropriation, projects, and legislation affecting the Pala Band;

   <u>E</u>   To manager all affairs of the Pala Band pertaining to tribal lands, money and natural resources provided that the Executive Committee shall not commit the Band to any contract, lease or other agreement unless specifically empowered to do so by the General Council, a tribal ordinance, or this Constitution.

   <u>F</u>   To apply for financial assistance from grant and contract programs for which the Pala Band may be an eligible applicant. Where a grant application requires the obligation of tribal funds, other than in-kind contributions, prior approval of the General Council is required.

   <u>G</u>   To appoint committees and delegates to assist the Executive Committees and delegates to assist the Executive Committee in carrying out business for the Tribe. These committees and delegates shall report regularly to the Executive Committee. No Committee shall make any binding decision for the Pala Band except to the extent that they are so authorized by a validly adopted Ordinance of the Pala Band.

   <u>H</u>   To enact ordinances to carry out any powers specifically conferred upon the Executive Committee by the General Council or by law.

   <u>I</u>   To enforce and carry out all ordinances adopted by the General Council.

**EXHIBIT 2**

**PAGE 21**

10

J       To provide required notice of and post the time, date, and place of tribal meetings and elections as required by this Constitution and any Ordinances of the Pala Band.

K       To regularly attend and participate in meetings of the Executive Committee and the General Council; provided however that the failure to attend three consecutive Executive Committee meetings or three consecutive General Council meetings shall be deemed an automatic resignation from the Executive Committee;

L       To represent the Pala Band to the best of the Executive Committee Member's ability with honesty, integrity, and fairness;

M       To promote the health, safety, and general well-being of the tribe and to administer fairly and expeditiously all tribal ordinances of the Pala Band.

N       To review and propose ordinances for approval or modifications by the General Council.

O       To promote Indian preference in employment; and

P       To carry out any other functions of responsibilities delegated to the Executive Committee by the General Council or by applicable law.

Section 12.    QUORUM AND VOTING

No member shall vote on any matter in which he/she or his/her immediate family has a personal interest or would receive personal benefit other than that provided for tribal members in general. For the purpose of this section, immediate family shall mean husband/wife, mother/father, son/daughter, grandfather/grandmother, grandchild, aunt/uncle, niece/nephew, and step-parent or step-child.

### ARTICLE VI - MISCELLANEOUS PROVISIONS

Section 1.    RIGHTS OF MEMBERS

The Pala Band shall provide all persons with due process and equal protection of the law required by the Indian Civil Rights Act (25 U.S.C. Section 1302).

### ARTICLE VII - SAVINGS CLAUSE

All enactments of the Tribe adopted before the effective date of this constitution shall continue in effect to the extent that they are consistent with this constitution.

**EXHIBIT 2**

PAGE 22

11

## ARTICLE VIII - SEVERABILITY

If any provision of this constitution shall in the future be declared invalid by a court of competent jurisdiction, the invalid provision or provisions shall be severed and the remaining provisions shall continue in full force and effect.

## ARTICLE IX - AMENDMENTS AND EFFECTIVE DATE

### Section. 1   EFFECTIVE DATE

This Constitution shall become effective immediately after its approval by a majority vote of the voters voting in a duly-called elections at which this Constitution is approved by the Bureau of Indian Affairs.

### Section 2.   FUTURE AMENDMENTS

This Constitution may be amended by a two-thirds (2/3) vote of the voting members of the Pala Band at an election duly-called for this purpose in which not less than half of the eligible members of the Pala Band cast their ballots.

**EXHIBIT 2**

**PAGE 23**

**CIVIL COVER SHEET**

JS44
[Rev. 07/89]

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

| I.(a) PLAINTIFFS | DEFENDANTS |
|---|---|
| PALA BAND OF MISSION INDIANS | ERIC THOMSON |

**FILED**

FEB 2 6 2004

**BY FAX**

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
SOUTHERN DISTRICT COURT
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

DEPUTY

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Jeffrey R. Keohane
Karshmer & Associates
2150 Shattuck Ave., #725
Berkeley, CA 94704   (510)841-5056

ATTORNEYS (IF KNOWN)
James A., Hutchens
Attorney
5626 Lancaster Drive
San Diego, CA 92120   (619) 229-0701

**04 CV 0419 W (BLM)**

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PT | DPF |  | PT | DPF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Trespass to Indian Reservation lands violating federal common law, Indian tribal law, and federal statutes, including 25 USC sec. 415 and 3713 and 3715.   28:1362; (8A)

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 862 Black Lung (923) | |
| ☐ 160 Stockholders Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| ☒ 290 All Other Real Property | | ☐ 555 Prisoner Conditions | | | |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding   ☐ 2 Removal from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23
DEMAND: preliminary & permanent injunctive relief   Check YES only if demanded in complaint
JURY DEMAND: ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions):   JUDGE N/A   Docket Number

DATE   SIGNATURE OF ATTORNEY OF RECORD

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

$150.00   2/26/04   #101477